BOGER CONTRACTING CORPORATION, APPELLANT, *v.* BD. OF
COMMISSIONERS OF STARK COUNTY ET AL., APPELLEES. ■

[Cite as Boger Contracting Corp. v. Board (1978),
60 Ohio App. 2d 195.]

(No. CA-4920—Decided August 24, 1978.)

*Messrs. Black, McCuskey, Souers & Arbaugh, Mr. Ronald
K. Bennington,* and *Mr. Randolph L. Snow,* for appellant.

*Messrs. Krugliak, Wilkins, Griffiths & Dougherty,* and
*Mr. Michael A. Thompson,* for appellees.

DOWD, J. This appeal presents the issue of what pro-
cedure must be followed to comply with the requirements for
competitive bidding for the construction of a county sanitary
sewer project where the board of commissioners modifies the
plans and specifications for the project after the required
statutory notice has been published and such a modification
was prior to the opening of the bid proposals.

The undisputed [2] facts which present the issue follow.

---

[2] A fact in dispute, and on which the trial court focused its attention, was
whether the rejected bidder-plaintiff received notice of the modification of the plans
and specifications.

On March 15, 1977, the Stark County Board of Commissioners (hereafter referred to as Commissioners) approved plans and specifications for Sanitary Sewer Project 405. The plans and specifications, as approved, did not indicate the time in which the work was to be completed. To the contrary, the original plans and specifications and the bid proposal form clearly indicate that the bidder was to specify the number of days he would take to complete the work of the project and that he would be bound by such bid and required to pay liquidated damages in the sum of $500 for each day of delay in completion beyond the number of days stated in his proposal.

On November 19, 1977, and November 26, 1977, and pursuant to R. C. 307.86 and R. C. 307.87, the Commissioners advertised for competitive bids on Sewer Project 405 in the Canton Repository, a newspaper of general circulation in Stark County. The advertisement was silent with respect to a completion date or time in which to complete the contract. The published notice declared:

"***Plans, specifications and proposal forms may be obtained at, ordered from, the office of the Stark County Engineer, County Office Building, Canton, Ohio, 44702. A non-refundable cash deposit of Forty Dollars ($40.00) will be required in advance for each set of plans and specifications taken from the above office.***"

On November 27, 1977, the Commissioners adopted a resolution providing for an addendum to the plans and specifications. The addendum called for a completion time of 180 days.

On December 7, 1977, Dale Hoagland of the plaintiff Boger Contracting Corporation (hereafter referred to as Boger) picked up the booklet of plans and specifications including the bid proposal forms at the office of the Stark County Sanitary Engineer.

On December 20, 1977, Boger submitted a bid for Sewer Project 405. Three other contractors submitted bids and they were opened on December 20, 1977, at 10 a.m. Boger's bid to do the work for $589,578.30 was the low bid. Boger's bid also declared that the completion time would be 360 days.

J. K. Boger, president of Boger, wrote the following two letters to the Board of Commissioners on December 20, 1977,

and December 21, 1977. The texts of the two letters follow:

"December 20, 1977

"Stark County Commissioners
  Virgil Musser
  Robert Schirack
  Norman Sponseller
County Office Building
Canton, Ohio 44702

Ref: Stark County
        Project 405 Bids.

"We were advised by a County Commissioner late this afternoon that an addendum limiting construction time to 180 days had been mailed to prospective bidders on Project 405.

"We were the low bidder on Project 405, but did not receive the preported (*sic*) addendum. This letter is to inform you we are prepared to accept this project with the 180 day limit or as called in the addendum.

"Very truly yours,

/s/ John K. Boger
J. K. Boger
President."

"December 21, 1977

"Stark County Commissioners
  Virgil Musser
  Robert Schirack
  Norman Sponseller
County Office Building
Canton, Ohio 44702

"Ref: Project 405
        and Letter of 12-20-77

"We have now been advised that the preported [*sic*] addendum limiting the contract time on Project 405 to 180 days was included with specification picked up for bidding after December 1, 1977. This addendum was not in the specifica-

tion we received and submitted. We are still prepared to complete the project with the 180 day limit at the same contract price.

> "Very truly yours,
>
> /s/ John K. Boger
> J. K. Boger
> President."

On February 16, 1978, the Commissioners adopted a resolution awarding the contract for the construction of Sewer Project 405 to the Crano Construction Company for its bid price of $599,509.70. In the resolution declaring the bid of Crano Construction Company to be the lowest and best bid, the Commissioners declared that the bid of Boger contained a completion date beyond that required in the addendum to the specifications and thus was not in compliance with the specifications for Project 405 and could not be considered for the award.

On February 24, 1978, Boger filed an action in the Common Pleas Court of Stark County against the Commissioners, Crano Construction Company, and others. The case proceeded to trial on Boger's amended complaint with a prayer for relief including a judicial declaration that the bidding be declared null and void and any contracts awarded pursuant thereto be declared null and void and that the project be resubmitted for advertising and bidding. It is with respect to this portion of Boger's prayer for relief in its amended complaint that the plaintiff now prosecutes its appeal.

The principal claim of Boger on appeal is that the judgment of the Common Pleas Court of Stark County, to the effect that the Commissioners complied with the competitive bidding requirements in awarding the construction contract for Project 405 to Crano Construction Company, is contrary to law.

The overriding purpose of the legislature in compelling mandatory competitive bidding by public bodies for major construction projects such as the project at hand is to protect the taxpayer and the users of the system against excessive costs and corrupt practices.

By the provisions of R. C. 307.90 and R. C. 6117.27, county commissioners are granted the right to award contracts for sewer construction projects to the lowest and best bidder in recognition of the fact that the lowest dollar bid might not in every instance be the best bid. *State, ex rel. Roger J. Au & Son, Inc.* v. *Studebaker* (1963), 120 Ohio App. 68, affirmed 175 Ohio St. 222. But, in the instant case, the controversy does not turn on which of the two bidders, Boger or Crano Construction Company, presented the lowest and best bid, for the Commissioners disqualified Boger's bid for *non-compliance* with the plans and specifications as modified by the addendum, which mandates the completion time at 180 days. Hence, in this case, the ultimate question is whether the competitive bidding procedures were in conformance with or contrary to law.

The statutory procedure (R. C. 307.86 through 307.92) for the receipt of competitive bids is silent on the method to be employed by a board of county commissioners where it concludes that a material part of the plans and specifications is to be modified (such as time of completion) after the notice requirements of R. C. 307.87 have been completed and the modification takes place prior to the opening of the bids.

Counsel for the opposing parties in this action cite no case law where a similar issue has arisen and declared in oral argument that the issue presented has no Ohio precedent to guide the court.

Turning to the facts at hand, the booklet of plans and specifications including the bid proposal forms available to potential bidders at $40 a copy is a complex document containing nearly 200 pages, many of which contain small print with more than 400 words to a page.

The single page containing Addendum One, adopted and approved by the resolution of November 29, 1977, states in its entirety as follows:

"Project 405                                "December 1, 1977
                        "Addendum One

"In the original bid package, no time is stipulated for the completion or length of contract. This Addendum One will serve as a notice that project 405 will have a completion time of 180 days."

The package of plans and specifications and bid proposal forms contained the following blank form requiring completion by the prospective bidder:

"Contractor: _____
Address: _____
Authorized Signature:_____
Total Bid Proposal:_____
Total Bid Proposal in Words:_____
_____
Completion time:_____ "

No effort was made to change that particular form essential to the bid. To be specific, no attempt was made to indicate that the completion time was fixed, *i.e.*, 180 days. Rather, the blank space after the phrase "completion time" was consistent with the numerous references to the time of completion in the bid instructions which indicate that the time of completion was a variable left to the discretion of the prospective bidder.

Where mandatory competitive bidding is required, it is axiomatic that every prospective bidder should have identical information upon which to submit a proposal. The plans and specifications which include instructions to the bidders employed by the Commissioners in this case reflect agreement with that principle. Included in the information contained in the $40 plans and specifications package are ten pages under the heading of "Information for Instructions to Bidders." On page three of that section is a detailed provision relating to a restriction upon the oral interpretation of the meanings of the plans and specifications, etc., plus information as to how any addendum will be delivered to prospective bidders. The relevant portion of the section entitled "Addendum and Interpretations" follows:

*"Addenda and Interpretations:* Neither the County nor the Engineer will make any oral interpretation of the meaning of the plans, specifications or other contract documents to any bidder, nor will any preference or approval be expressed in any way for any materials or equipment prior to the receipt of the proposals.

"If any person who contemplates the submission of a proposal is in doubt as to the true meaning of any part of the

plans, specifications or other proposed contract documents, he may submit to the Consulting Engineer, at least eight (8) days prior to the date set for receiving of proposals, a written request for any interpretation thereof. The person submitting the request will be responsible for its delivery.

"In the event of any error, ommission [*sic*] or discrepency in the contract drawings or between the drawings and specifications, the bidder shall request an interpretation in writing in advance of the taking of bids. Failing to do so, the Contractor must accept the ruling of the Engineer as to the correct intent.

"Any and all such interpretations and any supplemental instructions will be in the form of written addenda to the specifications which if issued, *will be mailed by registered mail with return receipt requested* (to the respective addresses furnished for such purposes) not later than four (4) days prior to the date fixed for the receiving of proposals to all parties of record as having taken out a complete set of plans and specifications. Failure of any bidder to receive any addendum or interpretation shall not relieve the bidder from any obligation under his bid as submitted. All addenda so issued shall become a part of the contract documents and must be attached to each proposal." (Emphasis added.)

In the instant case the Addendum One mandating a completion time of 180 days was adopted after four prospective bidders had already taken a copy of the plans and specifications from the office of the County Sanitary Engineer. The remaining copies of the plans and specifications package were, according to the testimony of an employee of the sanitary engineer's office, modified by inserting the one page addendum. One of such copies was then taken by Boger's employee, Hoagland, on December 7, 1977, and receipt of such copy with the addendum allegedly added constituted, in the view of the Commissioners, compliance with the obvious requirement that every bidder have all of the information needed prior to submitting a bid.

The plaintiff corporation testified through its president, Mr. John Boger, and Hoagland that the bid package received by Hoagland did not contain the addendum. Thus, the trial developed into a swearing contest with respect to the ques-

tion of whether Addendum One was included in the package received by Boger.

With respect to the swearing contest on the issue of whether the package of plans and specifications included Addendum One, the Commissioners prevailed in the trial court. On appeal, the Commissioners assert through counsel that the burden in the trial court was on Boger to establish the truth of the negative, *i.e.*, that the package of plaintiff's specifications received by its employee, Dale Hoagland, did not contain Addendum One, citing *Crooks* v. *Crooks* (1878), 34 Ohio St. 610. To apply such a test to the undisputed facts in this case would inevitably weaken the concept of competitive bidding.

In our view, where a board of county commissioners undertakes to modify the plans and specifications after publication of the required statutory notice, notice of the fact of the new addition, *i.e.*, the addendum, to prospective bidders must, at a minimum, be in accordance with a procedure which is beyond challenge so as to insure the integrity of the competitive bidding process. In the instant case, such a procedure was not utilized.

The procedure provided by the Project 405 plans and specifications for giving such notice of an addendum by registered mail with a return receipt requested is designed to and clearly protects the integrity of the competitive bidding process. Had it been employed, we doubt this controversy would have arisen.

But where, as here, an alternative procedure for giving notice of an addendum to the plans and specifications is utilized after the statutory notice has been published, and such alternative procedure is in violation of the procedure set forth in the plans and specifications, the alternative procedure so utilized, as a matter of law, must, as a minimum, establish *actual knowledge* on the part of the prospective bidder of the fact of the addendum. Thus, as a matter of law, where a challenge to that alternative procedure is promptly entered by an actual bidder who presents a *prima facie* case that he was unaware of the addendum to his prejudice, the bidding procedure employed by the board of county commissioners and its agents fails and the trial court is required to order the board to reject all bids and to enjoin the board from

entering into a contract with any of the bidders.

In the instant case, Boger presented a *prima facie* case that it was unaware of the addendum to its prejudice. The board of commissioners and its agents employed a procedure to notify Boger of the fact of the addendum in violation of its own plans and specifications and failed by its alternative procedure to establish *actual knowledge* on the part of Boger of the fact of the addendum.

Accordingly, as a matter of law, the Court of Common Pleas of Stark County should have ordered the Stark County Board of Commissioners to reject all bids received by it on December 20, 1977, with respect to Project 405 and enjoined the Stark County Board of Commissioners from entering into a construction contract for Project 405 with respect to any of the bidders, including the plaintiff, Boger Contracting Company, and the defendant, Crano Construction Company.

For the foregoing reasons, the first assignment of error, to the extent that it claims the judgment of the trial court is contrary to law, is sustained and, pursuant to Appellate Rule 12 (B), this court shall enter a final judgment accordingly.

*Judgment reversed.*

RUTHERFORD, P. J., and PUTMAN, J., concur.