[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
Plaintiff, F.S. Payne Co., d/b/a Payne Elevator ("Payne"), is an elevator contractor with its principal place of business located in Cambridge, Massachusetts. Payne seeks to restrain the Rhode Island Department of Administration ("DOA") from awarding a contract to Atlantic Elevator Co. ("Atlantic") with respect to an allegedly defective bid.
The court will summarize the evidence in this case which it found to be credible:
(1) On or about May 7, 1991, Payne received a four-page bid proposal from DOA which sought bids for the servicing of particular elevators in certain buildings on the URI campus.
(2) Historically, Payne had received such proposals in June of each year. The bid proposal specified two Otis elevators in Tyler Hall and in the Fine Arts Center Theater and five Wheel-o-Vator wheelchair lifts located in the Uhura Sa Sa House, Adams House, Harte House, Tootell Sports Complex and Washburn Hall and one porchlift wheelchair lift located in Chaffee Social Science Center.
(3) The bid proposal contained an "omission" in that it failed to reference twenty-two additional elevators located in nineteen buildings on the URI campus.
(4) As a result, Payne did not respond to the bid proposal, since it did not include the entire campus. Payne reasonably expected to receive a bid proposal for the entire campus in June.
(5) During the first week of June of 1991, Michael Szala, Payne's sales manager, contacted Harry Davis, Assistant Director of Facilities and Operations at the URI campus, and inquired as to when Payne would be receiving a bid proposal for the remainder of the elevators on campus. Mr. Davis informed Payne that the intended scope of the original bid proposal was for the servicing of all elevators on the URI campus. Mr. Davis informed Mr. Szala that he would inquire into the matter and get back to him. When he did not receive a return phone call from Mr. Davis, Szala telephoned Davis on June 7, 1991, and was informed that a page had been mistakenly omitted from the bid documents which would have identified the missing elevators. Mr. Davis took responsibility for the error and informed Mr. Szala that Payne should do nothing further and that the contract would be resolicited. Although this evidence is controverted, the Court finds Mr. Szala's testimony to be more persuasive.
(6) Approximately two weeks after that June 7, 1991 telephone conversation, Payne again contacted Mr. Davis to inquire as to when it would be receiving the new bid proposal, as it had not been received to that point. Payne was informed by Mr. Davis at that time that the contract had been awarded to another bidder, Atlantic. After that telephone conversation, Mr. Szala inspected the completed bid proposals submitted by the other bidders for the contract, including Atlantic Elevator's proposal, and discovered that those documents contained the same defect as the package submitted to Payne, in that they did not reference the entire campus.
(7) On or about June 20, 1991, Payne filed a written bid protest with the Chief Purchasing Agent of the DOA, requesting that the state not proceed further with the award to Atlantic. The Chief Purchasing Agent received the bid protest and responded negatively to it.
(8) On or about July 11, 1991, Mr. Davis prepared new bid specifications which clearly identify the twenty-two elevators which should have been included in the original bid documents and submitted those specifications to the URI purchasing office.
Plaintiff has standing to pursue this action. "Standing" means that a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy." (Black's Law Dictionary, page 260, 5th Ed. 1979). A two-pronged test of standing has evolved under which a plaintiff must show that the challenged agency action has caused it an "injury in fact" and that the injury was to an interest "arguably within the zone of the interest to be protected or regulated" by the statute or regulation in question. Ulstein Maritime Ltd. vs.United States, 646 F. Supp. 720 (D.R.I. 1986) (citingAssociation of Data Processing Service Organization, Inc. vs.Camp, 397 U.S. 150, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970)).
The "injury in fact" element of the test is satisfied where a plaintiff will suffer economic loss. Payne clearly satisfies this element of the test.
The "zone of interest" element is also satisfied, since Payne arguably is within the zone of interest to be protected or regulated by the State Purchases Act. R.I.G.L. 37-1-1, et. seq.
The State Purchases Act provides that it "shall be liberally construed and applied to promote its underlying purposes and policies" and that those underlying purposes and policies are to "insure the fair and equitable treatment of all persons who deal with the procurement system of the state". R.I.G.L. §§ 37-2-2(1) and (2)(e). There can be no question that potential bidders on state contracts, such as Payne, are within the zone of interest to be protected by the State Purchases Act. That proposition is even more compelling given the fact that Payne had provided the services that were subject of the defective bid proposal for some previous thirty years.
In order to obtain an injunction, Payne in addition to presenting a meritorious case must demonstrate certain other conditions. A plaintiff must show that it will suffer irreparable harm for which it has no adequate remedy at law. Furthermore, before awarding such relief, the court must balance the equities and determine that plaintiff's irreparable harm outweighs any harm which granting injunctive relief would inflict upon the defendant and that the public interest will not be adversely affected by granting such relief.
Payne has suffered irreparable harm for which it has no adequate remedy at law. DOA has deprived Payne of the opportunity of bidding on a contract it had performed for over thirty years. That deprivation proximately resulted from DOA's defective bid proposals which did not fully and fairly apprise potential bidders of the scope of the contract. By failing to bid on the contract, Payne has lost the opportunity to engage in a profit-making business activity. Even if Payne were to sue the state for damages, it could not recover expectation damages in the form of lost profits. Payne would be limited to recovering damages in the form of its bid preparation costs. ExcavationConstruction, Inc. vs. The United States, 494 F.2d 1289
(U.S.C.C. 1974). Irreparable harm exists where damages will not fully compensate a party. RI Turnpike and Bridge Authority vs.Cohen, 433 A.2d 179, 183 (R.I. 1981).
The unrebutted evidence shows that the bid proposal forwarded to potential bidders, including Payne, contained an "omission", in that it did not identify 22 elevators in 19 buildings, which URI intended to be part of the scope of the service contract. The bid was simply insufficient to permit a reasonable bidder to form a basis for intelligent and informed bidding. The fact that other bidders may have clarified the bid specification does not lead the Court to conclude that a reasonable person would not have interpreted the bid specification as did Payne. Also, the fact that URI later prepared more detailed specifications acknowledges that the original proposal was vague and had the effect of misleading Payne.
Other courts have held that if the plans and specifications are too vague, or if errors are made in drawing them, the bidding process is defective. Kudinger vs. City of Saginaw, 132 Mich. 395, 93 N.W. 914 (1903); Waszen vs. Atlantic City, 1 N.J. 272,63 A.2d 255 (1949); Warren Bros. Co. vs. Craner, 30 A.D.2d 437, 293 N.Y.S.2d 437 (1968); Boger Contracting Corp. vs. Board ofComm'rs, 60 Ohio App.2d 195, 396 N.E.2d 1059 (1978).
When the equities are balanced, Payne's interest prevails over that of DOA. Payne was denied the opportunity to bid for a valuable contract due to the "omission" of DOA and/or URI in preparing the bid proposal. If an injunction issues and DOA is compelled to resolicit bids, its only loss would be the expense of resolicition. While the public interest requires that bidding have finality, that interest in this instance is outweighed by the interest of assuring that the process is fair and permits all interested parties to submit informed bids.
For the foregoing reasons, DOA is enjoined from awarding the contract to Atlantic and it is ordered to resolicit bids with the proper specifications. Counsel shall prepare judgment accordingly.