OPINION
{¶ 1} The following appeal was submitted on the briefs of the parties. Appellant, Benefit Services of Ohio, Inc., appeals from a judgment entry of the Trumbull County Court of Common Pleas, granting summary judgment in favor of appellee, Trumbull County Commissioners. For the following reasons, we reverse the judgment of trial court and remand this matter for further proceedings.
 {¶ 2} On May 16, 2002, appellant filed a complaint for injunctive relief in the Trumbull County Court of Common Pleas, naming appellee as a defendant. The complaint alleged that appellee was in breach of contract and requested that appellee be enjoined from employing the services of another party to perform specified contractual obligations. The complaint further requested that appellee recognize the still existing contractual relationship between the parties.
 {¶ 3} In support of its contention, appellant submitted two separate contracts. The original contract was executed by the parties following appellant's successful public bid. The contract required appellant to perform workers' compensation claims administration services for all of appellee's employees at an annual service fee of $16,800. A clause within the contract provided for its automatic renewal at the end of one year. Furthermore, the contract stated that it could be terminated by either party upon ninety-day written notice to the other party.
 {¶ 4} The original contract was effective as of April 1, 1999, and was renewed on April 1, 2000. The language of the second contract was identical to the first with the exception of an increase in the annual service fee to $18,000. The automatic renewal clause again stated, "[t]his Agreement shall be effective for a period of one year from the effective date for fee purposes and may be terminated by either party, upon the provision of ninety (90) days' written notice to the other. * * * This agreement is automatically renewed upon each anniversary date unless terminated by either party as outlined above."
 {¶ 5} Appellant's complaint alleged that, following the automatic renewal of the contract on April 1, 2001, appellee breached the contract by failing to comply with the written ninety-day notice of termination clause and then accepting the public bid of a third party to perform appellant's contractual obligations. Appellant concluded that appellee could not assign its contractual obligations to a third party before termination of the contract.
 {¶ 6} On June 25, 2002, appellant filed an amended complaint. The amended complaint reiterated that appellee was in breach of contract, but substituted appellant's request for injunctive relief with a request for monetary damages in the amount of $18,000.
 {¶ 7} Following its responsive answer, appellee filed a motion for summary judgment. Appellee's summary judgment argued that appellant unilaterally terminated the contract via a January 23, 2002 letter, which was written and signed by appellant's president, Robert R. Carr ("Mr. Carr"). The January 23, 2002 letter was attached to the motion for summary judgment and stated that appellant had "been providing workers' compensation services for two additional risk numbers during the past year, which are not covered under the current contract. [Appellant] has been providing services to the Trumbull County Auxiliary Police and Trumbull County PWRE without charge during the past couple of years. [Appellant is] extending a contract to you in the amount of $500 for each of the different risk numbers as indicated above."
 {¶ 8} Appellee asserted that the foregoing letter established appellant's offer to execute a new contract for the 2002 to 2003 term, and that such offer acted to terminate the previous contract. Furthermore, appellee argued that it reasonably relied upon appellant's letter and subsequent public bid for the 2002 to 2003 term, in considering the contract to be terminated.
 {¶ 9} In response, appellant proceeded to file its own motion for summary judgment and brief in opposition. Appellant's summary judgment asserted that, by its provisions, the contract was automatically renewed for the 2002 to 2003 term. In its brief in opposition, appellant contended that the January 23, 2002 letter confirmed the renewal of the contract, as it stated, "[t]here will be no increase in the contract claims for the claims administration for this forthcoming year." Thus, appellant concluded that, because there was no written termination, the contract was automatically renewed.
 {¶ 10} Both parties then filed supplemental authority for their respective motions for summary judgment. Appellee's supplemental authority included a previously submitted letter from appellant, dated March 20, 2002. An affidavit from James Keating, Director of Personnel for Trumbull County, explained that the March 20, 2002 letter was in relation to prior discussions with appellant to extend the current contract for one month to allow appellee to determine whether it agreed to the "additional terms." Namely, these additions included contract provisions covering employees of the Trumbull County Auxiliary Police and the Trumbull County PWRE. Mr. Keating attested appellee was "not certain as of March 2002 exactly which direction to go" and, therefore, both parties agreed to extend the existing contract for one month, i.e., April 2, 2002 to April 20, 2002.
 {¶ 11} Based upon these submissions, appellee again argued that appellant had clearly offered a new contract. Appellee further argued that under R.C. 307.86, the contract was to be let out for public bid every year regardless of the contract's language; therefore, the contract violated competitive bidding requirements.
 {¶ 12} Appellant's supplemental brief countered by arguing that R.C. 307.86 was inapplicable. Thus, appellant maintained that the provisions of the contract controlled and required written termination.
 {¶ 13} On February 14, 2003, the trial court issued a judgment entry granting summary judgment in favor of appellee. In doing so, the court noted that the language of the contract relating to its effective term was ambiguous and that any contract with a cost in excess of $15,000 is to be put out for competitive bid. Moreover, the court determined that appellant modified the terms of the contract in its January 23, 2002 letter, by attempting to negotiate a better contract. As a result, the court concluded that appellee's actions in putting the contract out for public bid was in compliance with the law and granted appellee summary judgment.
 {¶ 14} From this judgment, appellant filed a timely notice of appeal and sets forth the following assignment of error for our consideration:
 {¶ 15} "The trial court erred in awarding summary judgment in Defendant-Appellee's favor and, sub silentio, in denying Plaintiff-Appellant's summary judgment motion below."
 {¶ 16} Prior to examining appellant's assignment of error, we will set forth the appropriate standard of review. An appellate court reviews a trial court's decision on a motion for summary judgment de novo. Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105. Summary judgment is proper when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come but to one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C); Leibreich v. A.J.Refrigeration, Inc., 67 Ohio St.3d 266, 268, 1993-Ohio-12.
 {¶ 17} Material facts are those facts that might affect the outcome of the suit under the governing law of the case. Turnerv. Turner (1993), 67 Ohio St.3d 337, 340, 1993-Ohio-176, citingAnderson v. Liberty Lobby, Inc. (1986), 477 U.S. 242, 248. To determine what constitutes a genuine issue, the court must decide whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law. Turner at 340.
 {¶ 18} The party seeking summary judgment on the ground that the nonmoving party cannot prove its case bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claims. Dresher v. Burt,75 Ohio St.3d 280, 293, 1996-Ohio-107. The moving party must be able to point specifically to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claim.Dresher at 293.
 {¶ 19} If the moving party fails to satisfy this initial burden, summary judgment should be denied. Id. However, if this initial burden is met, the nonmoving party has a reciprocal burden to respond, by affidavit or as otherwise provided in the rule, in an effort to demonstrate that there is a genuine issue of fact suitable for trial. Id.
 {¶ 20} Under its sole assignment of error, appellant first argues that the trial court erred in finding the contract language ambiguous, thereby allowing the court to apply its own interpretation of the contract. Accordingly, appellant contends that the court was prohibited from not upholding the clear contract language providing for an automatic renewal when there was no written termination.
 {¶ 21} At the outset, we note that the trial court found the contract to be ambiguous as to its effective term limit. In doing so, the court determined, "[t]he contract states that it is a one year contract but may but may be [sic] terminated at any time with ninety days notice. Furthermore, the contract states that it is automatically renewed for a one year term if not at some time previously terminated." Clearly, the court found the contract to be ambiguous based upon its conclusion that the relevant language first provided for the contract to be limited to a one-year term, and then proceeded to provide that the contract's term was unlimited and would automatically renew absent written termination.
 {¶ 22} Our de novo review of the relevant contract language finds no ambiguity. Specifically, the relevant contract provision states, "[t]his Agreement shall be effective for a period of one year from the effective date for fee purposes and may be terminated by either party, upon the provision of ninety (90) days' written notice to the other. * * * This Agreement is automatically renewed upon each anniversary date unless terminated by either party as outlined above." (Emphasis added.) The language of the contract confirms that the provision for appellant's services automatically renews absent written termination. The only provision of the contract that is limited to a one-year term is the service fee.
 {¶ 23} This is further confirmed by the contract clause which states, "[appellee] agrees to provide [appellant] with thirty (30) days' written notice prior to renewal date of its intent to adjust service fees." (Emphasis added.) This provision further demonstrates that the one-year term limit relates solely to the contract's service fee, thereby allowing the parties to adjust the fee when the contract automatically renews. Thus, there is no ambiguity regarding the term of the contract, as the contract's language establishes that it automatically renews absent written termination.
 {¶ 24} Accordingly, the resolution of the case before us turns solely upon the following two issues: (1) whether, as a matter of law, R.C. 307.86 required appellee to put the contract up for public bid; and (2) whether appellant presented a genuine issue of material fact regarding the actual termination of the contract.
 {¶ 25} Appellant contends that the contract complied with the bidding requirements of R.C. 307.86, as it was not necessary for the parties to issue a competitive bid following every yearly renewal. Furthermore, appellant maintains that there is no evidence of any written termination ninety days prior to appellee's assignment of the contractual obligations to a third party.
 {¶ 26} First, we will turn our attention to the applicability of R.C. 307.86. R.C. 307.86 regulates the county commissioners' authority to enter into service contracts. As will be discussed, if the executed contract fails to comply with the relevant statutory prerequisites, the contract is void and unenforceable. Neither party provided the trial court, or this court, with any clear authority relating to the validity of the contract under R.C. 307.86. Nevertheless, we will review and apply the relevant statutory mandates.
 {¶ 27} Prior to a June 23, 2003 amendment, R.C. 307.86
stated:
 {¶ 28} "Anything to be purchased, leased, leased with an option or agreement to purchase, or construct, including, but not limited to, any product, structure, construction, reconstruction, improvement, maintenance, repair, or service, * * * at a cost in excess of fifteen thousand dollars, * * * shall be obtained through competitive bidding. * * *"
 {¶ 29} As mentioned above, R.C. 307.86 was amended on June 23, 2003, increasing "fifteen thousand dollars" to "twenty-five thousand dollars." Nevertheless, it is well-established that "statutes must be presumed to be prospective in their effects[.]"New Par v. Pub. Utilities Comm. of Ohio, 98 Ohio St.3d 277,2002-Ohio-7245, at ¶ 12. Thus, because the contract at issue was entered into before the June 23, 2003 amendment, and because the statute does not state that it is to be applied retroactively, the contract at issue required competitive bidding as its annual service fee was over fifteen thousand dollars. Moreover, the instant contract does not fall under any of the exceptions to the competitive bidding requirement pursuant to R.C. 307.86(A)-(L).
 {¶ 30} The language and intent of R.C. 307.86 is unambiguous. When the meaning of a statute is unambiguous and definite, then it must be applied as written and no further interpretation is appropriate, and the statute's words must be accorded their usual, normal, or customary meaning. Weiss v. Pub. UtilitiesComm. of Ohio, 90 Ohio St.3d 15, 17, 2000-Ohio-5.
 {¶ 31} That being said, it is clear that former R.C. 307.86
requires county commissioners to put out a service contract for public competitive bidding when its cost is in excess of fifteen thousand dollars. See, e.g., Sentinel Sec. Systems v. Medkeff
(1987), 36 Ohio App.3d 86. The intent of competitive bidding is "`to provide for open and honest competition in bidding for public contracts and to save the public harmless, as well as bidders themselves, from any kind of favoritism or fraud in its varied forms.'" Cedar Bay Constr., Inc. v. Fremont (1990),50 Ohio St.3d 19, 21, quoting Chillicothe Bd. of Edn. v.Sever-Williams Co. (1970), 22 Ohio St.2d 107, 115. See, also,Rien Constr. Co. v. Bd. of Trumbull Cty. Commrs.
(2000),138 Ohio App.3d 622, 628.
 {¶ 32} Here, the issue is whether the contract, which includes automatic renewal and written notice of termination clauses, complied with the competitive bidding requirements. A review of the applicable law establishes that the contract at issue was not per se prohibited by statute and there remains a genuine issue of material fact regarding whether the parties complied with the notice requirements for competitive bidding.
 {¶ 33} "`Whatever the rule may be elsewhere, in this state the public policy, as indicated by our constitution, statutes and decided cases, is, that to bind the state, a county or city for supplies of any kind, the purchase must be substantially in conformity to the statute on that subject, and that contracts made in violation or disregard of such statutes are void, not merely voidable, and that courts will not lend their aid to enforce such a contract directly or indirectly, but will leave the parties where they have placed themselves. If the contract is executed, no action can be maintained to enforce it, and if executed on one side, no recovery can be had against the party of the other side.'" Cuyahoga Cty. Bd. of Commrs. v. Richard L.Bowen and Assoc., Inc., 8th Dist. No. 81867, 2003-Ohio-3663, at ¶ 21, (holding that the county commissioners, in their solicitation of a design services contract, failed to comply with relevant statutory authority, thereby rendering the subsequent service contract void), quoting Buchanan Bridge Co. v. Campbell
(1899), 60 Ohio St. 406, 419. Thus, if the instant contract does not conform to the statutory prerequisites of R.C. 307.86, it will be considered void and unenforceable, allowing appellee, as a matter of law, to bid out and enter into a new contract without written termination.
 {¶ 34} Moreover, parties who contract with the county are charged with knowledge of the county's limitations in executing contracts. Kraft Constr. Co. v. Cuyahoga Cty. Bd. of Commrs.
(1998), 128 Ohio App.3d 33, 45. Therefore, it is the responsibility of the contractor involved in negotiations with public authorities to "ascertain whether the contract complies with the Constitution, statutes, charters, and ordinances so far as they are applicable. If he does not, he performs at his peril." Ohio Asphalt Paving Inc. v. Ohio Dept. of Indus.Relations (1992), 63 Ohio St.3d 512, 516.
 {¶ 35} Here, the contract at issue was put out for public competitive bid, as required by R.C. 307.86. Ultimately, appellant was awarded the bid, and both parties executed a contract on April 1, 1999. As discussed previously, the executed contract provided for a service fee adjustment, ninety-day written notice of termination, and automatic yearly renewal absent termination.
 {¶ 36} In examining R.C. 307.86, we note that there is nothing prohibiting the parties from entering into a contract which renews automatically, is subject to written termination, or allows the parties to adjust the service fee by a prescribed formulary. However, "`[t]he policy of the law is * * * against the power of one board of county commissioners to make contracts so indefinite in time that the same may extend beyond the life of the board, and thus bind another or future board * * * [.] * * * [T]he general rule is that such contracts, extending beyond the term of the existing board, and employment of agents or servants of the county for such period, thus tying the hands of a succeeding board, are not looked upon with favor * * * [.]" Bd.of Cty. Commrs. of Lawrence Cty., Ohio v. L. Robert Kimball andAssoc. (C.A.6, 1989), 860 F.2d 683, 687, quoting State ex rel.Allen v. Lutz (1924), 111 Ohio St. 333, 338-339.
 {¶ 37} Here, although the contract provides for an indefinite automatic yearly renewal, it also allows either party to terminate the contract at any time with ninety-day written notice. The termination clause of the contract would allow future county commissioners to terminate the contract. Thus, the contract itself does not violate public policy, as appellee did not bind succeeding county commissioners to the instant contract.
 {¶ 38} As for the contract provision which provided for a subsequent renewal and adjustment of the service fee, standing alone, it also does not constitute a per se violation of the competitive bidding requirements of R.C. 307.86.
 {¶ 39} Nevertheless, it is axiomatic that the competitive bidding requirement under R.C. 307.86 requires the county commissioners to provide notice of the proposed bid via a newspaper publication. R.C. 307.87. The notice is required to state "the terms of the proposed purchase[.]" R.C. 307.87(B)(4). Any subsequent modification of the proposed terms, without further notification or statutory exception, would violate the competitive bidding requirements of R.C. 307.86, as such an action would tend "to undermine the integrity of the competitive bidding process." Dayton v. McGee (1981), 67 Ohio St.2d 356,359. See, also, Boger Contracting Corp. v. Bd. of Commrs. ofStark Cty. (1978), 60 Ohio App.2d 195, 200, (noting that "[w]here mandatory competitive bidding is required, it is axiomatic that every prospective bidder should have identical information upon which to submit a proposal.").
 {¶ 40} Here, neither party provided the trial court with evidence of the actual terms of the contract as proposed in the bidding notice. Arguably, if either the automatic renewal provision or service fee adjustment provision did not correspond or was not included with the original terms of the bidding notice, then the executed contract would violate the competitive bidding requirements and would be void and unenforceable.
 {¶ 41} In the case at bar, the absence of any evidence relating to the contents of the bidding notice creates a genuine issue of material fact regarding the parties' compliance with R.C. 307.87(A). Thus, there is a genuine issue of material fact as to whether the actual contract terms relating to the service fee adjustment and automatic renewal were contained in the bidding notification. This omission precluded the trial court from granting summary judgment in favor of appellee.
 {¶ 42} The second issue presented by appellant requires us to determine whether there was a genuine issue of material fact regarding the contract's actual termination. After careful examination of the evidence submitted by both parties in support of their respective motions for summary judgment, we find that there exists a genuine issue of material fact as to the issue of termination.
 {¶ 43} First, the January 23, 2002 letter did not constitute appellant's written termination of the contract. The general context of the letter was a reminder to appellee that the contract would be renewed after March 31, 2002. The letter further attempted to negotiate additional contracts for employees that were not previously covered by the contract. The January 23, 2002 letter failed to provide written notification that appellant was unilaterally terminating the contract. It was a proposal and an invitation to negotiate, and nothing more
 {¶ 44} Furthermore, provisions within the contract allowed appellant to request or to negotiate a modification of the service fee without terminating the contract. Specifically, these provisions stated:
 {¶ 45} "[Appellant] reserves the right to adjust or amend fees if it is determined that the historical data upon which the fees herein were developed were based upon erroneous, obsolete or insufficient information or a material change in the Client's business occurs which affects the mix and/or volume of business other than that contemplated at the inception of the agreement.
 {¶ 46} "* * *
 {¶ 47} "[Appellant] agrees to provide client with thirty (30) days' written notice prior to renewal date of its intent to adjust service fees."
 {¶ 48} The foregoing demonstrates that the January 23, 2002 letter did not represent appellant's anticipatory breach or termination of the existing contract. Instead, the letter merely exercised appellant's contractual right to negotiate a service fee increase due to a change in business volume. The January 23, 2002 letter did not provide written notice of termination.
 {¶ 49} Furthermore, we note that appellee failed to establish that it reasonably relied upon either the January 23, 2002 letter or appellant's public bid as a written notice of termination. With respect to the January 23, 2002 letter, Mr. Keating's affidavit stated that the subsequent March 20, 2002 letter confirmed the extension of the existing contract because appellee was not certain "which direction to go" with the proposed increase in the service fee. This statement contradicts appellee's argument that it reasonably relied upon the earlier January 23, 2002 letter as a written notice of termination. Further, any verbal statements regarding the intent of the parties to terminate the contract are insufficient to fulfill the required written notification.
 {¶ 50} Moreover, we will not consider appellant's public bid for the 2002 to 2003 contract as written notification of termination. To do so, would contradict the plain language of the contract requiring a written ninety-day notice of termination. Appellee put the contract out for public bid without written notification of termination, thereby forcing appellant to enter a bid in an attempt to retain its contract. Thus, appellee could not reasonably rely upon the public bid as a written notice of termination.
 {¶ 51} There is no evidence of the type listed in Civ.R. 56(C) that appellee or appellant provided written notice of termination ninety days prior to contracting with a third party. Thus, there is a genuine issue of material fact with respect to whether the contract was terminated prior to appellee assigning appellant's contractual rights to a third party. Accordingly, summary judgment was not proper on this basis.
 {¶ 52} Based upon the foregoing analysis, appellant's sole assignment of error is with merit as there was no per se violation of R.C. 307.86, and there were genuine issues of material fact relating to the proposed contract terms of the bidding notice and the actual termination of the contract. Accordingly, we hereby reverse the judgment of the trial court and remand this matter for further proceedings consistent with this opinion.
Rice, J., concurs, Grendell, J., dissents with Dissenting Opinion.