THE STATE, EX REL. DACEK, *v.* CLEVELAND TRINIDAD PAVING CO.

(Decided March 28, 1929.)

*Messrs. Cline & Patterson, Mr. Robert E. Roehm,* and *Mr. Smith W. Bennett,* for plaintiff in error.

*Mr. Ray T. Miller,* prosecuting attorney, and *Mr. E. J. Hopple,* for Cuyahoga County Commissioners, Auditor, and Treasurer.

*Mr. Gilbert Bettman,* attorney general, *Mr. L. F. Laylin* and *Mr. J. A. Godown,* for Director of Highways.

*Messrs. Boyd, Cannon, Brooks & Wickham,* for defendant in error.

KUNKLE, J. Plaintiff in error filed a petition and an amendment thereto in the lower court praying for an injunction and other equitable relief.

In brief, plaintiff in error in his petition states that he is a taxpayer of Cuyahoga county, a political subdivision of the state of Ohio, and that he brings this suit in the name of the state of Ohio, and for its benefit and on its behalf, against the defendants Harry J. Kirk, as director of highways of the state of Ohio, John H. Horn, Jerry Zmunt, and John G. Fischer, constituting the board of commissioners of Cuyahoga county, Ohio, hereafter referred to as the commissioners; John A. Zangerle, as auditor of Cuyahoga county, Ohio, and Walter E. Cook, as treasurer of Cuyahoga county, Ohio.

He further alleges that he requested the county prosecutor of Cuyahoga county to bring this action, but that said prosecutor has failed and refused to do so.

The Cleveland Trinidad Paving Company is a corporation with principal offices in the city of Cleveland. Plaintiff in error further avers in his petition that on or about December 18, 1926,

the said commissioners made application under the then laws of Ohio to the state highway commissioner for aid by the state for the improvement of an intercounty highway, variously known as "I. C. H. No. 17" and as the "Cleveland-Massillon Road," and also locally known as the "Brecksville Road;" that thereafter said application was granted by the director of highways of Ohio; that various proceedings were had after said application was granted in relation to said improvement, both by the commissioners and by the director of highways, which culminated on or about the 20th day of April, 1928, in the director receiving bids for the material and work for paving said highway; that on April 26, 1928, the director attempted to award a contract for said work to the Cleveland Trinidad Paving Company, one of the defendants; that, although the contract so attempted to be awarded was entered into between said company and the director, the greater part of the money to be paid thereon is to be derived from taxes and assessments levied and collected from property located in Cuyahoga county, which taxes and assessments attempted to be levied are purported to have been authorized and levied by the action of the commissioners; that said contract made by said director with the Cleveland Trinidad Paving Company is illegal, constitutes an abuse of power of said director, and would by its terms and the provisions of certain resolutions passed by said commissioners amount to an abuse of corporate powers on the part of said director and commissioners, and to the misapplication of the public funds of this county and its taxpayers; that said proceedings taken by said commissioners in connec-

tion with said improvement since June 2, 1928, have been taken under the belief, by them, that the laws relating to such proceedings which were effective prior to that date still controlled the proceedings to be taken and acts to be done by said commissioners, whereas the new so-called "State Highway Code," also known as the "Norton-Edwards Act," should have controlled; and that such contrary proceedings and acts of said commissioners are in violation of the provisions of said new "Highway Code."

Plaintiff in error further claims that the director, both by former and the present law, was required to advertise for bids for two consecutive weeks in two newspapers of general circulation of two dominant political parties, published in Cuyahoga county, but that said director in violation of law failed and refused to so advertise for bids, and in fact did advertise in three newspapers, the Cleveland Press, the Cleveland Plain Dealer, and the Lakewood Courier, all of which espoused the cause of the Democratic party, and no two of which are of opposite dominant political parties; that one of said newspapers carrying said advertisement stated that bids would be received on the 30th day of April, 1928, while the other two stated that bids would be received on April 20, 1928, whereas the bids were actually opened on April 20, 1928.

Plaintiff in error claims that neither the advertisement in the Cleveland Press nor the one in the Plain Dealer was published as required by law, in that two full weeks did not expire between the first publication and the time limit set for receiving the bids.

Plaintiff in error further claims that, although

the auditor of Cuyahoga county certified on April 19, 1928, one day before bids were actually received, that the funds were "in the treasury, or had been levied, placed on the tax duplicate and in process of collection," or are "being obtained by sale of bonds issued on account of said improvement, which bonds are sold and in process of delivery," said funds were not in the treasury, nor had said taxes been placed on the tax duplicate, nor had any bonds been issued, nor sold, to provide for said funds, and that the commissioners well knew that said certificates so issued did not state the facts in relation to said funds.

Plaintiff in error further alleges that said commissioners attempted to levy the assessments to provide funds for said improvement on the 19th day of April, 1928, when as a matter of fact the total amount of said assessments was at that time unable to be determined, for the reason that certain damages to property, and compensation for properties taken by the commissioners in widening the said road, had not been determined, and that the attempted levy of the assessments was consequently illegal; that the improvement described in the plans and specifications deviated from the inter-county highway as laid out, and that the commissioners failed to provide the requisite right of way prior to the letting of the contract; that the director of highways failed until about the 16th day of April, 1928, to notify the director of welfare to furnish the type and kind of brick made by the state of Ohio, although he had placed the advertisements for bids, as shown in newspapers, and had illegally attempted to enter into a contract, as heretofore set forth, for the purchase of said brick before receiving any reply from the

director of welfare and without first ascertaining from him the price at which such brick could be furnished by the director of welfare; and that by reason of the foregoing, and by reason of the violation of other provisions of the laws of the state of Ohio governing the conduct of said commissioners and director in cases of this nature, the letting of the contract by the said director is illegal.

Plaintiff in error therefore prays that a restraining order be issued against each and every defendant, enjoining the Cleveland Trinidad Paving Company from doing any work, furnishing any material, or permitting to be done any and all acts attempted to be authorized by the contract between it and said director relating to the improvement of the said highway, and that the defendant officials of Cuyahoga county and the state director of highways be enjoined from paying any funds on account of said contract, issuing any notes or bonds, or doing or permitting to be done any and all acts in any way connected with said highway improvement, and that upon final hearing the contract be held void and of no effect.

By way of amendment to the petition, plaintiff in error in substance claims that the said director is improving said Brecksville Road on a different line, and between different termini, and for a lesser mileage than those on which said improvement was originated and legislation enacted; that plaintiff in error and other taxpayers affected thereby are being deceived and misled by the director of highways and county commissioners, in that said legislation for improving the entire length of Brecksville Road from Willow Bridge to the Summit county line

was enacted, whereas they are improving only certain parts of said Brecksville Road.

Plaintiff in error further claims that the highway director and the county commissioners failed to offer the notes and bonds proposed to be issued to the sinking fund commissioners of Cuyahoga county, as provided by law.

An issue was joined by the pleadings, and the case was submitted to the lower court, with the result that the injunction prayed for was denied and the petition of plaintiff in error dismissed. An appeal bond was fixed at $100,000.

The case comes into this court by petition in error and not on appeal.

It will be observed that plaintiff in error, by the averments of his petition and the amendment thereto, raises a number of very interesting and important questions.

Counsel have favored the court with unusually helpful briefs, which not only cite and comment upon the pertinent decisions of the courts of this and other states, but also contain citations of such portions of the evidence as counsel think important in determining the questions involved.

We shall not attempt to discuss in detail the authorities cited by counsel, nor shall we attempt in this opinion to discuss all of the grounds relied upon by plaintiff in error for relief by way of an injunction.

During the oral argument some reference was made to the interest, or rather to the want of interest, that plaintiff in error as a taxpayer really had in the improvement in question and in this litigation.

We think it sufficient to say that he has qualified

himself as a taxpayer and is therefore legally entitled to bring this suit. Beyond that this court cannot inquire.

We shall discuss but two of the questions involved, viz., the certificate of the auditor and the advertisements.

While there are important questions raised by some of the other alleged irregularities complained of in the petition and the amendment thereto, such as the right to make an assessment for the improvement in question before the entire right of way has been acquired for the construction of the highway in question, and also the right to make any assessment for said improvement under the circumstances disclosed by the record, nevertheless, upon consideration of the authorities cited and the reasons given, we are of opinion that the proceedings, in so far as they relate to such other objections, are regular and not subject to impeachment by a taxpayer.

We think the letting of this contract is controlled by what is known as the new "Highway Code" or the "Norton-Edwards" bill. In so far as the two questions which we shall discuss are concerned, it probably will make no substantial difference whether the contract is governed by the new or the old law, as the provisions in reference to these two questions are substantially the same in both the old and the new law.

We cannot escape the conclusion that the notice of the letting of this contract was irregular in the following respects:

It appears from the record, page 81, that bids were received on this project up to 2 o'clock on April 20,

1928, and the approval of the Attorney General's office is dated April 20, 1928.

Section 1206, General Code (Section 28 of the new Highway Act, 112 Ohio Laws, page 445), is to the effect that before entering into a contract of this nature the director shall advertise for bids *for* two consecutive weeks in two newspapers of general circulation, one from each of the two dominant political parties, published in the county or counties in which the improvement, or some part thereof, is located, if there be any such papers published in said counties. In brief, the notice of receiving bids shall be published *for* two consecutive weeks in two newspapers of general circulation, of the two dominant political parties, published in the county in which the improvement is located.

In view of the limited circulation disclosed by the record, in so far as the Lakewood Courier is concerned, we are inclined to think that it is not a paper of general circulation in Cuyahoga county, but, assuming for the purposes of this case that it is such, it is conceded that it is a Democratic newspaper and that a correct advertisement in this paper would not of itself support the letting of the contract. On April 5 and 12 notice was published in this paper that bids would be received till 2 o'clock p. m., April 20, 1928.

Such notice must be published for the term of two consecutive weeks in papers of opposite political affiliations.

The Cleveland Press, an independent newspaper, made its first publication of this letting upon April 6, 1928, and it appears from the copy of this publication, which is attached as an exhibit, that the advertisement stated that bids would be received until 2 o'clock p. m., April 30, 1928.

It is suggested that this date, viz., April 30th, is a clerical error, and that possibly this clerical error appeared in only a portion of that edition of the Cleveland Press. As above stated, a copy of this edition is attached as an exhibit, and if any presumption arises it would be that the entire edition was published as it appears in the copy attached. If it is claimed that this is only an isolated copy of that edition, then such fact should be shown by the authorities who claim to have acted upon the regularity of the publication. In other words, it is the duty of public officials to comply with the mandatory requirements of the law, and upon their failure to do so they are without authority to make a binding contract.

The evidence shows that the advertisement in this paper on April 13th, a week later, stated that bids would be received until 2 o'clock p. m., April 20, 1928. Eliminating the confusion in these two dates, we are still of opinion that the advertisement in the Cleveland Press cannot be relied upon to sustain the letting in question, for the reason that the advertisement showing the date of the letting as of April 20, until 2 o'clock p. m., was not made for two full weeks.

The other advertisement was in the Cleveland Plain Dealer, a Democratic newspaper, or at least an Independent Democratic newspaper. The first issue containing the notice that bids would be received was issued on April 6, 1928, and the time of receiving such bids was fixed as April 20, 1928. Bids were actually received on April 20, 1928, until 2 o'clock p. m.

The rule of law for the computation of time is fixed by Section 10216, General Code.

Was the publication in either the Cleveland Press or the Cleveland Plain Dealer sufficient to support the contract?

In *State* v. *Kuhner & King*, 107 Ohio St., 406, 140 N. E., 344, the second paragraph of the syllabus is as follows: "The requirement of Section 1206, General Code, that 'the state highway commissioner shall advertise for bids for two consecutive weeks,' is mandatory, and a contract entered into on June 14th, after advertisement in two weekly newspapers of the county on June 6th and June 13th, is invalid."

At page 415 of this decision, 107 Ohio St., 140 N. E., 344, 346, Judge Matthias, after quoting the facts in that particular case, says: "Was this a compliance with the requirement of the section that 'the state highway commissioner shall advertise for bids for two consecutive weeks?' In our opinion the word 'for' has some significance as used in this statute, and applying the dictionary meaning thereof, which seems to us clearly indicated by the context as that most likely meeting the intent of the Legislature, such advertisement is required 'during the continuance of' or 'throughout' the period of two weeks."

In *Cowen* v. *State,* 101 Ohio St., at pages 387-390, 129 N. E., 719, it is held that the statutory provisions in reference to advertising for letting of a contract are mandatory. See also *Neiswander* v. *Brickner,* 116 Ohio St., 249, 156 N. E., 138.

From the reasoning employed in the above and other Ohio decisions to which reference might be made, it follows that two full calendar weeks must elapse subsequent to the date of the first publication before the date fixed for receiving the bids.

Under the rule so fixed, in our opinion, the advertisement in the Cleveland Plain Dealer falls short of the statutory time. The public was entitled to the whole day of April 20th in which to file bids, and the bids could not be limited to a time prior to the expiration of fourteen full days. The limitation for the filing of bids and the closing of the bids on April 20th at 2 p. m. rendered same invalid, even assuming that the newspapers selected for these advertisements substantially complied with the law in reference to their political affiliation.

The statute requires the advertisement to be made *for* two weeks. The Supreme Court holds this means two full weeks. This requirement is therefore stronger than one wherein an act is directed to be performed *within* a specified time.

On April 26, 1928, the contract was actually awarded the Cleveland Trinidad Paving Company and it was notified of such award. The contract was signed May 8, 1928.

Section 5660, General Code, provides that:

''No contract, agreement or other obligation calling for or requiring for its performance the expenditure of public funds from whatsoever source derived, shall be made or assumed by any authority, officer, or employee of any county or political subdivision or taxing district, nor shall any order for the payment or expenditure of money be approved by the county commissioners, council or by any body, board, officer or employee of any said subdivision or taxing district, unless the auditor or chief fiscal officer thereof first certifies that the money required to meet such contract, agreement or other obligation, or to make such payment or expenditure, has been law-

fully appropriated or authorized or directed for such purpose and is in the treasury or in process of collection to the credit of the appropriate fund. * * *

"Taxes and other revenues in process of collection or the proceeds to be derived from lawfully authorized bonds, notes, or certificates of indebtedness sold and in process of delivery shall, for the purposes of this section, be deemed in the treasury or in process of collection and in the appropriate fund."

Section 33 of the new law (Section 5625-33, General Code), as found in 112 Ohio Laws at page 406, provides that: "No subdivision or taxing unit shall: * * * Make any contract or give any order involving the expenditure of money unless there is attached thereto a certificate of the fiscal officer of the subdivision that the amount required to meet the same * * * has been lawfully appropriated for such purpose and is in the treasury or in process of collection to the credit of an appropriate fund free from any previous encumbrances. Every such contract made without such a certificate shall be void and no warrant shall be issued in payment of any amount due thereon," etc.

While the proceedings for the establishment of this improvement are governed by the old law, yet in our opinion the contract in question, having been entered into after the taking effect of the budget law, is subject to the provisions of such new law. In so far as this question is concerned, we think the result would be the same whether measured by the provisions of the old or the new law.

The record, in our opinion, clearly shows that the certificate of the county auditor, as to the money being in the fund or in process of collection when

the contract was let, was not justified under either the new law or under the old law governing such contracts.

Under both the old and new law, the statutes require the money to be on hand or in process of collection before a valid contract can be entered into. When the certificate of the public officer to that effect is made the amount of the contract is thereupon charged against the fund.

No notes or bonds were ever issued and the officials of the Guarantee Trust Company only agreed to take the bonds in the event there was no litigation in respect thereto. We have carefully read the record in so far as it throws any light on this proposition, including the correspondence which has been introduced, and we are clearly of opinion that no obligation of the trust company existed which could have been enforced against the trust company nor against which a certificate of funds could have been properly issued as provided by law.

The powers and duties of commissioners and their public officers are discussed in the case of *Buchanan Bridge Co.* v. *Campbell,* 60 Ohio State, page 406, 54 N. E., 372, and in various other cases cited. The substance of these decisions is that county commissioners and other public officials have no power to bind the public except in the manner provided by law, and if they fail to pursue the course prescribed by statute, the contract which they attempt to enter into is void, not merely voidable.

For the above reasons we have reached the conclusion that the contract in question is void and should be enjoined.

The judgment of the lower court will be reversed,

132

and cause remanded for such further proceedings as are provided by law.

*Judgment reversed.*

ALLREAD and HORNBECK, JJ., concur.