COMMUNICARE, INC., Appellant,

v.

WOOD COUNTY BOARD OF COMMISSIONERS, Appellee.

[Cite as *CommuniCare, Inc. v. Wood Cty. Bd. of Commrs.*, 161 Ohio App.3d 84, 2005-Ohio-2348.]

Court of Appeals of Ohio,
Sixth District, Wood County.

No. WD–04–057.

Decided May 13, 2005.

---

86

Geoffrey E. Webster, J. Randall Richards, and Eric B. Hershberger, for appellant.

Raymond C. Fischer, Wood County Prosecuting Attorney, and Linda F. Holmes, Assistant Prosecuting Attorney, for appellee.

---

Skow, Judge.

{¶ 1} Appellant, CommuniCare, Inc. ("CommuniCare"), appeals from a judgment by the Wood County Court of Common Pleas, granting summary judgment in favor of appellee, Wood County Board of Commissioners ("Wood County"). For the reasons that follow, we affirm.

{¶ 2} On November 21, 1995, CommuniCare and Wood County entered into a written contract, under whose terms CommuniCare agreed to provide day-to-day operation and management services to the Wood County Nursing Home. This three-year agreement (which was the third such agreement by the parties since they had begun their relationship in 1987) self-renewed for additional two-year periods unless either party gave 90 days' notice of intent not to renew.

{¶ 3} The contract was renewed twice, first in November 1998, and again in November 2000. On May 16, 2001, six months after the contract was renewed for the second time, Wood County sent CommuniCare a written notice of breach and intent to terminate the contract. On August 19, 2002, CommuniCare filed a breach-of-contract action against Wood County.

{¶ 4} Wood County filed its original answer and counterclaim on September 30, 2002. Trial was originally scheduled for June 25, 2003, but after two continuances was ultimately scheduled for July 26, 2004.

{¶ 5} In early June 2004, less than two months before the last scheduled trial date, Wood County moved to amend its answer and assert new defenses. Those defenses included (1) that the agreement was void because it was not competitively bid and (2) that the agreement contravened Ohio law by improperly delegating duties to operate and manage the county nursing home. CommuniCare filed an opposition to the motion. After considering the motion and CommuniCare's opposition, the trial court granted the motion to amend on June 14, 2004.

{¶ 6} On June 16, 2004, Wood County filed its amended answer and requested leave to file a motion for summary judgment on the newly pleaded defenses. The court granted the motion for leave, and on June 25, 2004, Wood County filed its motion and supporting memorandum.

{¶ 7} On July 2, CommuniCare requested an extension of time until July 15, 2004, to respond to the motion for summary judgment. The court granted this request on July 7, 2004. The following morning, Wood County filed a reply brief.

{¶ 8} On July 20, 2004, the court granted Wood County's motion for summary judgment. The court based its decision on a finding that the agreement was void

because it had not been competitively bid pursuant to R.C. 307.86. The court rejected Wood County's alternative basis for summary relief, finding that because CommuniCare was subject to Wood County's supervision, direction, and control, the agreement did not constitute an improper delegation of duties under R.C. 5155.03.

{¶ 9} CommuniCare timely appealed both the entry of summary judgment and the entry granting Wood County leave to amend its answer and counterclaim.

{¶ 10} CommuniCare raises the following assignments of error:

{¶ 11} "Assignment of Error No. 1: The court erred by granting the request of defendant appellee Wood County for leave of court to amend its answer (Judgment Entry granting leave, filed June 11, 2004)."

{¶ 12} "Assignment of Error No. 2: The court erred by granting defendant-appellee Wood County's motion for summary judgment (Decision, Order, and Judgment Entry on defendant's motion for summary judgment rendered July 19, 2004)."

{¶ 13} "Assignment of Error No. 3: The court erred by failing to find that the county was estopped from and/or waived its right to raise new affirmative defenses (Decision, Order and Judgment Entry on the county's motion for summary judgment rendered July 19, 2004)."

{¶ 14} In addition to the foregoing assignments of error raised by Communi-Care, there is a cross-assignment of error raised by Wood County:

{¶ 15} "Cross–Assignment of Error No. 1: The trial court erred when it held that the Management Agreement did not impermissibly delegate to a private corporation the Board's statutory duties under O.R.C. § 5155.03. (Decision, Order and Judgment Entry, pg. 6)"

 {¶ 16} We begin by addressing CommuniCare's first assignment of error, wherein CommuniCare alleges that it was error for the trial court to grant Wood County's request for leave to amend its answer.

 {¶ 17} Under Ohio law, an affirmative defense is waived unless it is presented (1) by motion before pleading pursuant to Civ.R. 12(B), (2) affirmatively in a responsive pleading under Civ.R. 8(C), or by amendment under Civ.R. 15. *Jim's Steak House, Inc. v. Cleveland* (1998), 81 Ohio St.3d 18, 20, 688 N.E.2d 506. "Thus, under the Ohio Rules of Civil Procedure, if an affirmative defense is not raised in the answer, it is not necessarily waived ad infinitum." *Am. Express Travel Related Serv., Inc. v. Carleton*, 10th Dist. No. 02AP–1400, 2003-Ohio-5950, 2003 WL 22511623, at ¶ 10. In fact, because "the language of Civ.R. 15(A) favors a liberal amendment policy, * * * a motion for leave to amend should be granted absent a finding of bad faith, undue delay or undue prejudice to the opposing

party." *Hoover v. Sumlin* (1984), 12 Ohio St.3d 1, 6, 12 OBR 1, 465 N.E.2d 377. Prejudice to an opposing party is the most critical factor to be considered in determining whether to grant leave to amend. *Frayer Seed, Inc. v. Century 21 Fertilizer & Farm Chem., Inc.* (1988), 51 Ohio App.3d 158, 165, 555 N.E.2d 654. Timeliness of the request is another factor to consider, but delay, in itself, should not operate to preclude an amendment. Id.

{¶ 18} An appellate court will not reverse a trial court's decision on a motion to amend absent an abuse of discretion. *Wilmington Steel Prod., Inc. v. Cleveland Elec. Illum. Co.* (1991), 60 Ohio St.3d 120, 122, 573 N.E.2d 622. The term "abuse of discretion" connotes more than an error of law or judgment and implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 87, 19 OBR 123, 482 N.E.2d 1248.

{¶ 19} CommuniCare argues that it was an abuse of discretion for the trial court to allow Wood County's amendment because the factors of bad faith, undue delay, and prejudice to CommuniCare are all manifest in this case.

{¶ 20} CommuniCare specifically argues that the trial court erred in overlooking bad faith, undue delay, and prejudice attendant to the county's proposed amendment to a "waived defense." In support of its claim that Wood County waived the competitive-bidding/illegality defense, CommuniCare (1) points to the fact that Wood County's original and amended responsive pleading both assert that CommuniCare's breach of the contract caused termination of the agreement and (2) represents that Wood County "admitted the validity of the contract." Addressing these points, Wood County acknowledges the former, stating that its counterclaim supported its reasons for termination by asserting that CommuniCare's failure to perform resulted in damages to the county. Regarding the latter point, Wood County admits only that the attached copy of the contract (drafted by CommuniCare) contains language representing that the agreement had been "validly assented to."

{¶ 21} To the extent that Wood County's responsive pleadings may be read to contain statements inconsistent with the competitive-bidding/illegality defense, this court notes that alternative pleading is permitted under the Civ.R. 8(E)(2).[1] In our opinion, neither the timing of the pleading of the competitive-bidding/ille-

---

1. Civ.R. 8(E)(2) provides: "A party may set forth two or more statements of a claim or defense alternatively or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as he has regardless of consistency and whether based on legal or equitable grounds. All statements shall be made subject to the obligations set forth in Rule 11."

gality defense nor the existence of claims potentially inconsistent with that defense compels a finding of waiver in this case.

{¶ 22} CommuniCare next argues that the county's amended answer unfairly prejudiced CommuniCare because it prevented CommuniCare from conducting discovery in a manner that permitted discovery on all of the county's defenses concurrently. This court is unaware of a right entitling a party to conduct discovery on all of an opponent's defenses simultaneously. In addition, CommuniCare itself states in its appellate brief that the competitive-bidding/illegality defense, if applicable, should have been obvious from the outset and, as such, did not require any discovery. Moreover, CommuniCare was not prevented from obtaining the discovery it sought in connection with the competitive-bidding/illegality defense. As pointed out by Wood County in its appellate brief, the county, after filing its motion for summary judgment, agreed to the deposition of Wood County fiscal manager Darcy Wilhelm, the individual who executed the affidavit filed with the motion for summary judgment and who had been listed as a witness for the county for more than a year and a half.

{¶ 23} CommuniCare also states that it was prejudiced because it was not given an adequate opportunity to respond to the motion for summary judgment. In fact, as indicated above, the trial court granted CommuniCare's request for an extension of time to file its memorandum in opposition to the motion until July 15, 2004.

{¶ 24} CommuniCare next asserts that Wood County waived the illegality defense until it became clear to the county that it was unlikely to prevail on its claims against CommuniCare and could not escape liability to CommuniCare on its breach-of-contract claim. That assertion, presumably made in support of CommuniCare's claim of bad faith, is unsupported by the facts contained in the record and is therefore found to be meritless.

{¶ 25} For all of the foregoing reasons, CommuniCare's first assignment of error is found not well taken.

{¶ 26} CommuniCare argues in its second assignment of error that the trial court erred in granting Wood County's motion for summary judgment.

{¶ 27} An appellate court reviewing a trial court's granting of summary judgment does so de novo, applying the same standard used by the trial court. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Civ.R. 56(C) provides:

{¶ 28} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule."

{¶ 29} Summary judgment is proper where (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) when the evidence is viewed most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, a conclusion adverse to the nonmoving party. *Ryberg v. Allstate Ins. Co.* (July 12, 2001), 10th Dist. No. 00AP–1243, 2001 WL 777121, citing *Tokles & Son, Inc. v. Midwestern Indemn. Co.* (1992), 65 Ohio St.3d 621, 629, 605 N.E.2d 936.

{¶ 30} The moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of fact as to an essential element of one or more of the nonmoving party's claims. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292, 662 N.E.2d 264. Once this burden has been satisfied, the nonmoving party has the burden, as set forth at Civ.R. 56(E), to offer specific facts showing a genuine issue for trial. Id.

{¶ 31} In challenging the summary judgment entry, CommuniCare specifically disputes the trial court's conclusion that the management agreement is subject to competitive bidding pursuant to R.C. 307.86. R.C. 307.86 grants authority to the county commissioners to enter into service contracts. *Benefit Serv. of Ohio, Inc. v. Trumbull Cty. Commrs.*, 11th Dist.App. No. 2003–T–0045, 2004-Ohio-5631, 2004 WL 2376479, at ¶ 26.

{¶ 32} The relevant version of R.C. 307.86 provides as follows:

{¶ 33} "Anything to be purchased, leased, leased with an option or agreement to purchase, or constructed, including, but not limited to, any product, structure, construction, reconstruction, improvement, maintenance, repair, or service, except the services of an accountant, architect, attorney at law, physician, professional engineer, construction project manager, consultant, surveyor, or appraiser, by or on behalf of the county or contracting authority, as defined in Section 307.92 of the Revised Code, at a cost in excess of fifteen thousand dollars, * * * shall be obtained through competitive bidding."

{¶ 34} (The only difference in the quoted portion of the statute in the current version is the current limit of $25,000.)

{¶ 35} According to CommuniCare, the management agreement is exempt from the requirements of R.C. 307.86 for all of the following reasons: (1) the agreement was for the services of a consultant; (2) the agreement was for personal services of a specialized nature; (3) there are alternative methods in place to protect the public interest; (4) other counties do not competitively bid

this type of agreement; (5) county funds are not at issue; and (6) another statute controls the operation of a county nursing home.

### 1. Whether the agreement was for the services of a consultant.

■ {¶ 36} In arguing that the agreement was exempt from competitive bidding because it engaged the services of a consultant, CommuniCare cites deposition testimony by Wood County fiscal manager Wilhelm wherein she admits that the county had previously considered the agreement exempt as a consultant agreement.

■ {¶ 37} Unfortunately for CommuniCare, what the county representatives may have believed at the time the contract was executed is not determinative in this analysis. Statutory requirements for competitive bidding on contracts are mandatory. See *Benefit Serv. of Ohio, Inc. v. Trumbull Cty. Commrs.,* supra, 2004-Ohio-5631, at ¶ 31 ("it is clear that former R.C. 307.86 requires county commissioners to put out a service contract for public competitive bidding when its cost is in excess of fifteen thousand dollars"); see, also, *State ex rel. Schaefer v. Bd. of Cty. Commrs. of Montgomery Cty.* (1967), 11 Ohio App.2d 132, 40 O.O.2d 296, 229 N.E.2d 88 (concerning contracts for the erection of county buildings); *Buchanan Bridge Co. v. Campbell* (1899), 60 Ohio St. 406, 54 N.E. 372, syllabus (concerning a contract for the purchase and erection of a bridge). The intent of competitive bidding is " 'to provide for open and honest competition in bidding for public contracts and to save the public harmless, as well as bidders themselves, from any kind of favoritism or fraud in its varied forms.' " *Cedar Bay Constr., Inc. v. Fremont* (1990), 50 Ohio St.3d 19, 21, 552 N.E.2d 202, quoting *Chillicothe Bd. of Edn. v. Sever–Williams Co.* (1970), 22 Ohio St.2d 107, 51 O.O.2d 173, 258 N.E.2d 605; see, also, *Rein Constr. Co. v. Bd. of Trumbull Cty. Commrs.* (2000), 138 Ohio App.3d 622, 628, 741 N.E.2d 979.

■ {¶ 38} Contracts made in violation of state statute or in disregard of such statutes are void, not merely voidable, and courts will not lend their aid to enforce such contracts directly or indirectly but will leave the parties where they have placed themselves. *Benefit Serv. of Ohio, Inc. v. Trumbull Cty. Commrs.,* supra, 2004-Ohio-5631, at ¶ 33; see, also, *State ex rel. Dacek v. Cleveland Trinidad Paving Co.* (1929), 35 Ohio App. 118, 131, 171 N.E. 837; see, also, *Kraft Construction Co. v. Cuyahoga Bd. of Commrs.* (1998), 128 Ohio App.3d 33, 44, 713 N.E.2d 1075. A contractor must ascertain whether the contract complies with the state constitution, statutes, charters, and ordinances, so far as they are applicable, and a contractor who fails to do so performs the contract at his or her peril. *Lathrop Co. v. Toledo* (1966), 5 Ohio St.2d 165, 173, 34 O.O.2d 278, 214 N.E.2d 408; see also, *Kraft,* supra, at 45, 713 N.E.2d 1075 ("those who deal with

the county are charged with knowledge of the county's limitations in executing contracts").

{¶ 39} The primary objective of a court when construing the terms of a written contract is to give effect to the intent of the parties; the intent is presumed to rest in the language that the parties have chosen to employ. *Saunders v. Mortensen*, 101 Ohio St.3d 86, 2004 Ohio 24, 801 N.E.2d 452, at ¶ 9, citing *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 411, paragraph one of the syllabus. "Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph two of the syllabus. Where the terms of a contract are clear and unambiguous, a court need not look beyond the plain language of the agreement to determine the rights and obligations of the parties. *Aultman Hosp. Assn. v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 53, 544 N.E.2d 920.

{¶ 40} Review of the plain language of the agreement reveals that Wood County overwhelmingly sought CommuniCare's management, not consultant, services. Although the contract contains some mention of consulting work, consultant services were to be provided "[i]n addition to management services" and were to be reviewed with the county prior to initiation. The agreement further provided that consultant services would be provided "over and above management services * * * and only with prior approval by the county." Any consulting services that were to be provided under the contract were clearly secondary to the fundamental purpose of the contract, which was to obtain management services for the day-to-day operation of the nursing home.

{¶ 41} Because the agreement in this case was fundamentally for management, and not consultant, services, we find that the exemption for consultant services that is set forth at R.C. 307.86 does not apply.

## 2. Whether the agreement was for personal services of a specialized nature.

{¶ 42} Citing *State ex rel. Doria v. Ferguson* (1945), 145 Ohio St. 12, 30 O.O. 241, 60 N.E.2d 476, CommuniCare argues that another well-recognized exception to the competitive-bidding process is a contract for personal services of a specialized nature requiring the exercise of peculiar skill and aptitude. Id., paragraph two of the syllabus.

{¶ 43} The statute at issue in the current case, R.C. 307.86, specifically identifies as exempt the personal services of "an accountant, architect, attorney at law, physician, professional engineer, construction project manager, consultant,

surveyor, or appraiser." The legislature did not include or in any way make reference to a more generalized "personal services" exception in the language of the statute.

{¶ 44} Courts have long recognized the principle of expressio unius est exclusio alterius—that is, "the expression of one thing implies the exclusion of another." *Newbury Twp. Bd. of Trustees v. Lomak Petroleum, Inc.* (1992), 62 Ohio St.3d 387, 393, 583 N.E.2d 302. Applying that principle to the instant case, it is clear that the statute requires that all personal services not expressly exempted in the statute be competitively bid. As none of the enumerated exceptions applies to the management services at issue herein, there is no exemption upon which CommuniCare can rely to sidestep the mandatory competitive-bidding requirement.

### 3. Whether the existence of alternative methods to protect the public interest eliminates the competitive-bidding requirement in this case.

{¶ 45} CommuniCare next points to *Danis Clarkco Landfill Co. v. Clark Cty. Solid Waste Mgt. Dist.* (1995), 73 Ohio St.3d 590, 653 N.E.2d 646, for the proposition that competitive bidding is not required where alternative methods are in place to protect the public interest. *Danis* involved the question of the applicability of R.C. 307.86 to a solid-waste-disposal company seeking not money, but a "designation" in exchange for its agreement to build and operate a solid-waste-disposal facility. Although the court acknowledged that the designation was potentially worth millions to the company receiving it (in that it would render the recipient company eligible to receive lucrative projects), the court ultimately concluded that the designation-selection process simply did not meet the monetary minimums of R.C. 307.86 and thus did not trigger the statute's competitive-bidding requirement.

{¶ 46} A reading of the court's discussion of alternative methods to protect the public interest makes clear that the existence of those alternative methods was in no way used as a basis for circumventing the competitive-bidding requirement in that case; as indicated above, the competitive-bidding requirement was found inapplicable. It appears, instead, that the court made mention of those alternative methods to demonstrate that although the General Assembly had not enacted a competitive-bidding requirement that reached designations of privately owned and operated solid waste disposal facilities, the General Assembly had taken other measures designed to protect the public interest that did.

{¶ 47} The *Danis* case is clearly inapposite to the matter at hand. CommuniCare's argument to the contrary is therefore not well taken.

### 4. Whether the fact that other counties do not competitively bid this type of agreement eliminates the competitive-bidding requirement in this case.

{¶ 48} Next, CommuniCare asks this court to consider the practice of other counties in determining the applicability of the competitive-bidding requirement. Specifically, CommuniCare points to its management agreements with Franklin and Cuyahoga Counties, which were not competitively bid under R.C. 307.86. As stated by the trial court in this matter, a court cannot adopt another county's interpretation of a statute. Instead, the court must look at the agreement and the controlling statute to decide the validity of a contract.

### 5. Whether county funds are at issue.

{¶ 49} CommuniCare next argues that competitive bidding is not required because county funds are not at issue. As indicated above, in order to trigger the competitive-bidding requirement under the applicable version of R.C. 307.86, the contract had to cost in excess of $15,000. Under the terms of the agreement, the county was required to pay 2.75 percent of the nursing-home gross income. CommuniCare contends that because the facility derives all of its revenues from Medicare, Medicaid, and private-pay residents, there is no cost to the county at all. We are not persuaded by this argument.

{¶ 50} Where a county derives the revenues it uses to pay contract costs is wholly irrelevant to the question of the applicability of R.C. 307.86. R.C. 307.86 does not draw a distinction between county funds and other monies used to pay contract costs such as the ones at issue. Thus, in our opinion, the 2.75 percent of the nursing-home gross income clearly represents a cost as contemplated by the statute.[2]

{¶ 51} Arguing to the contrary, CommuniCare cites *Medcorp v. York Twp.*, 6th Dist. No. F–02–019, 2002-Ohio-7308, 2002 WL 31888214. *Medcorp* involved the interpretation of a phrase set forth at R.C. 505.44 (dealing with competitive-bidding rules applicable to ambulance service organizations), wherein it was provided that certain contracts "shall not be entered into with a state agency or nonprofit corporation that receives more than half of its operating funds from governmental entities." The question for the appellate court was whether the trial court abused its discretion in finding that the term "operating funds from governmental entities" as used in R.C. 505.44 did not include payments from Medicare and Medicaid. The appellate court ultimately determined that there had been no abuse of discretion, basing its decision on a finding that Medicare

---

2. Nowhere does CommuniCare argue that this cost was not in excess of $15,000.

and Medicaid benefits belong to the individual receiving the medical services, not to the state agency or nonprofit corporation receiving those funds.

{¶ 52} Fundamentally, *Medcorp* involves the question of how to characterize certain income for purposes of determining the applicability of R.C. 505.44. We have already determined that the source of the county revenues used to pay contract costs is of no consequence in this case. Therefore, CommuniCare's reliance on *Medcorp* is clearly misplaced.

{¶ 53} For the foregoing reasons, CommuniCare's argument that competitive bidding is not required because county funds are not at issue is not well taken.

### 6. Whether another statute controls the operation of a county nursing home.

{¶ 54} Finally, CommuniCare asserts that competitive bidding pursuant to R.C. 307.86 is not required in this case because R.C. Chapter 5155, which controls the operation of county nursing homes, does not require competitive bidding to procure goods and services for those nursing homes. In support of this argument, CommuniCare points out that in all of R.C. Chapter 5155, only R.C. 5155.31(D) makes any provision for competitive bidding. R.C. 5155.31(D), which has recently been revised, previously provided that whenever the board of county commissioners determined that a county nursing home was unsuitable for habitation or its operation was economically unfeasible, the board was authorized to sell or lease through competitive bidding the nursing home, together with all of its contents of personal property.[3] This highly specific provision was limited even further by the fact that it applied only to a sale or lease executed prior to December 31, 1983. R.C. 5155.31(D). The provision did not apply to purchases of goods and services for the operation of a nursing home.

{¶ 55} CommuniCare also points to R.C. 5155.01, which provides:

{¶ 56} "The board of county commissioners shall make all contracts for new buildings and for additions to existing buildings necessary for the county home, and shall prescribe rules for the management and good government of such home and to promote sobriety, morality, and industry among residents."

{¶ 57} Thus, under R.C. 5155.01, the board of county commissioners is charged with making contracts for new construction of county homes and with prescribing rules for the management of county homes. Contrary to CommuniCare's representation, the section does not authorize a board of county commissioners "to contract for the operation and maintenance of a county facility."

---

3. The latest revision of R.C. 5155.31, effective April 29, 2005, rewrites the section and omits any mention of competitive bidding whatsoever.

{¶ 58} CommuniCare argues that because R.C. Chapter 5155 does not require competitive bidding except upon specified circumstances, the Ohio General Assembly has made clear its intent that competitive bidding is not required.

{¶ 59} R.C. 1.51 provides:

{¶ 60} "If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail."

{¶ 61} Reading the provisions in pari materia, as required by R.C. 1.51, we disagree with CommuniCare's assertion that the provisions of R.C. Chapter 5155 and R.C. 307.86 conflict. The fact that R.C. Chapter 5155 does not specifically require competitive bidding does not compel the conclusion that the purchases of goods and services are exempt from general competitive-bidding requirements set forth at R.C. 307.86.

{¶ 62} On the basis of the foregoing, we find that competitive bidding controls county purchases of goods and services used in the operation of a county nursing home. Therefore, CommuniCare's second assignment of error is found not well taken.

{¶ 63} CommuniCare asserts in its third and final assignment of error that the trial court erred in failing to find that Wood County was estopped from and/or waived its right to raise the new affirmative defenses. Specifically, CommuniCare claims that because Wood County has entered into three contracts and two renewals with CommuniCare, the doctrines of estoppel and waiver bar the county's defense of failure to competitively bid the agreement.

{¶ 64} As indicated above, the statutory requirements for competitive bidding for county contracts are mandatory and cannot be waived. See *Buchanan Bridge Co. v. Campbell*, 60 Ohio St. 406, 54 N.E. 372. In addition, equitable estoppel should not be applied where its effect would be to supersede statutory law. *State v. First, Inc.* (April 3, 1990), 2d Dist. No. 11486, 1990 WL 40668. "It is obvious that estoppel should not be applied if it would in effect allow the State's agents to unilaterally amend the acts of the legislature. This would not only be unconstitutional, but also anathema to any rational concept of democratic government." Id.

{¶ 65} Applying the above-stated principles to the instant case, it is clear that waiver and estoppel should not be employed to allow public officials and private companies to avoid the statutory duty to competitively bid contracts pursuant to R.C. 307.86. The trial court did not err in rejecting those doctrines as a basis for

denying summary judgment in this case. Accordingly, CommuniCare's third assignment of error is not well taken.

{¶ 66} We now turn to Wood County's cross-assignment of error, wherein Wood County argues that the trial court erred when it held that the management agreement properly delegated to a private corporation the board's statutory duties under R.C. 5155.03. Because determination of this assignment of error is not necessary to preserve the judgment below, we declare it moot. Therefore, we decline to give the county's cross-assignment of error further consideration. See App.R. 12(A)(2).

{¶ 67} For the foregoing reasons, the judgment of the trial court is affirmed. Pursuant to App.R. 24, costs are assessed to the appellant.

Judgment affirmed.

HANDWORK and PIETRYKOWSKI, JJ., concur.