**MORROW COUNTY AIRPORT, Appellant and Cross–Appellee,**

v.

**WHETSTONE FLYERS, LTD., Appellee and Cross–Appellant.**

[Cite as *Morrow Cty. Airport Auth. v. Whetstone Flyers, Ltd.,* 162 Ohio App.3d 624, 2005-Ohio-4314.]

Court of Appeals of Ohio,
Fifth District, Morrow County.

No. 04 CA 6.

Decided Aug. 16, 2005.

Manos, Martin, Pergram & Dietz and Dennis L. Pergram, for appellee and cross-appellant.

Tom C. Elkin, Assistant Prosecuting Attorney, for appellant and cross-appellee.

WISE, Judge.

{¶ 1} Appellant and cross-appellee Morrow County Airport Authority appeals the decision of the Morrow County Court of Common Pleas that denied its motion for summary judgment and granted the motion for summary judgment filed by appellee and cross-appellant, Whetstone Flyers, Ltd. The following stipulated facts give rise to this appeal.

{¶ 2} In 1981, Whetstone Flyers entered into a lease agreement with the airport authority. Pursuant to the terms of the lease, Whetstone Flyers obtained the right to use a portion of the airport property. The lease agreement gave Whetstone Flyers the option, but not the duty, to erect hangars on the parcel. The duration of the lease agreement was 20 years and, upon expiration of the term, the airport authority was bound to renew the lease or pay Whetstone Flyers for the hangars. According to the lease agreement, the purchase price was to be determined by each side appointing an appraiser. The appointed appraisers would then select a third appraiser and the three appraisers would determine the value.

{¶ 3} After signing the lease agreement, Whetstone Flyers formed a limited partnership and built hangars. At the conclusion of the 20–year lease, the airport authority refused to honor the terms of the lease agreement. Instead, on May 21, 2001, the airport authority filed an action for declaratory relief asking the trial court to find the lease void on three grounds.

{¶ 4} First, the airport authority argued that the lease is void because Max Craven, who was a member of the airport authority board at the time the lease was approved, was also a partner in Whetstone Flyers. Second, the airport authority argued that the Morrow County Board of Commissioners failed to comply with R.C. 307.10 when it approved the lease agreement. Third, the airport authority argued that the lease agreement violated Section 6, Article VIII of the Ohio Constitution.

{¶ 5} Appellee Whetstone Flyers joined the Morrow County Commissioners as third-party defendants and counterclaimed to have the lease agreement enforced. Thereafter, on August 19, 2002, Whetstone Flyers filed a motion for summary judgment. The airport authority filed a motion for summary judgment on September 9, 2002. The trial court granted Whetstone Flyers' motion for summary judgment and denied the airport authority's motion for summary judgment on April 5, 2004.

{¶ 6} The airport authority timely filed a notice of appeal and sets forth the following assignments of error for our consideration:

{¶ 7} "I. The lease with option to buy entered into by appellant, Morrow County Airport Authority, and appellee, Whetstone Flyers, Ltd., was void by virtue of being in violation of R.C. 2921.42(A)(4) & R.C. 308.04.

{¶ 8} "II. The lease with option to buy was void ab initio and could not be ratified by a later act by the Board of Morrow County Commissioners."

## Cross–Assignment of Error

{¶ 9} "I. Although the trial court was correct in granting summary judgment in favor of Whetstone Flyers, it erred by not ordering the airport authority and the Morrow County Commissioners to comply with the arbitration procedures set forth in the lease."

## Summary Judgment Standard

{¶ 10} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 36, 30 OBR 78, 506 N.E.2d 212. As such, we must refer to Civ.R. 56 which provides:

{¶ 11} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in the party's favor."

{¶ 12} Pursuant to the above rule, a trial court may not enter summary judgment if it appears that a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the nonmoving party has no evidence to prove its case. The moving party must specifically point to some evidence that demonstrates that the nonmoving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the nonmoving party to set forth specific facts demonstrating that there is a genuine issue of material fact for trial. *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 429, 674 N.E.2d 1164, citing *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264.

{¶ 13} It is based upon this standard that we review the airport authority's assignments of error.

## I

{¶ 14} In its first assignment of error, the airport authority maintains that the lease agreement entered into with Whetstone Flyers was void because it was entered into in violation of R.C. 2921.42(A)(4) and 308.04. We agree.

{¶ 15} R.C. 2921.42(A)(4) addresses the issue of having an unlawful interest in a public contract. This section of the statute provides:

{¶ 16} "(A) No public official shall knowingly do any of the following:

{¶ 17} " * * *

{¶ 18} "(4) Have an interest in the profits or benefits of a public contract entered into by or for the use of the political subdivision or governmental agency or instrumentality with which he is connected."

{¶ 19} Further, R.C. 308.04 specifically requires that each member of the board of trustees of an airport authority "take and subscribe to an oath or affirmation that he will honestly, faithfully, and impartially perform the duties of his office, and that he will not be interested directly or indirectly in any contract let by the regional airport authority."

{¶ 20} In the case sub judice, the airport authority argues that the above statutes were violated when it entered into the lease agreement with Whetstone Flyers because Max Craven was a board member of the airport authority and a partner in the limited partnership created by Whetstone Flyers. In its judgment entry, the trial court did not make a specific finding that a conflict of interest existed.

{¶ 21} Instead, the trial court concluded:

{¶ 22} "Whatever defect there might have been in the Whetstone lease, the Commissioners approved it and adopted it as their as (sic) own. They did so without any input by Max Craven. Thereafter, the Commissioners and the Authority followed and continued to operate under the terms of the lease indicating by their conduct that it was their contract."

{¶ 23} Thus, the trial court concluded that any defect in the lease agreement due to Max Craven's involvement was cured by the commissioners' subsequent adoption of a resolution dated November 19, 1986. This resolution specifically stated, "It is the intent of this resolution to ratify any and all acts of the de facto, if not de jur (sic), the Morrow County Airport Authority * * *."

{¶ 24} We disagree with the trial court's conclusion. Max Craven, as a partner in Whetstone Flyers, had an interest in the profits or benefits in the lease

agreement with the option to buy, which he approved as a board member of the airport authority. Such conduct on the part of Max Craven was in clear violation of R.C. 2921.42(A)(4) and 308.04.

{¶ 25} Our conclusion is supported by a recent Ohio Attorney General Opinion:

{¶ 26} "[I]t is my opinion * * * that R.C. 308.04, which requires a member of the board of trustees of a regional airport authority to take and subscribe to an oath or affirmation to honestly, faithfully, and impartially perform the duties of office and not to be interested directly or indirectly in any contract let by the regional airport authority, prohibits that member from being employed by an entity with which the airport authority contracts, from being a stockholder in a company with which the airport authority contracts, or from entering into a contract negotiated with the airport authority." 2000 Ohio Atty.Gen.Ops. No. 2000–015, at 503.

{¶ 27} In reaching this conclusion, the Attorney General explained:

{¶ 28} "The basic reason for prohibiting a public official from having an interest in a contract of the agency that the official serves has been stated as follows:

{¶ 29} "To permit those holding offices of trust or profit to become interested in contracts for the purchase of property for the use of the state, county, or municipality of which they are officers, might encourage favoritism, and fraudulent combinations and practices, not easily detected, and thus make such officers, charged with the duty of protecting those whose interests are confided to them, instruments of harm. *The surest means of preventing this, was to prohibit all such contracts*; and the legislature having employed language sufficiently clear and comprehensive for this purpose, there is no authority in the courts under the pretext of construction to render nugatory the positive provisions of the statute. *Doll v. State*, 45 Ohio St. 445, 449, 15 N.E. 293, 295 (1887) (emphasis added.) 1984 Op. Att'y Gen. No. 84–097." Id. at 498.

{¶ 30} Further, due to the violations of R.C. 2921.42(A)(4) and 308.04, we conclude that the lease agreement is void. In a recent decision, the Sixth District Court of Appeals held:

{¶ 31} "Contracts made in violation of state statute or in disregard of such statutes are void, not merely voidable, and courts will not lend their aid to enforce such contracts directly or indirectly but will leave the parties where they have placed themselves. *Benefit Serv. of Ohio, Inc. v. Trumbull Cty. Commrs.*, [Trumbull App. No. 2003–T–0045] 2004-Ohio-5631 [2004 WL 2376479], at ¶ 33; see, also, *State ex rel. Dacek v. Cleveland Trinidad Paving Co.* (1929), 35 Ohio App. 118, 131, 171 N.E. 837; see, also, *Kraft Construction Co. v. Cuyahoga Bd. of Commrs.* (1998), 128 Ohio App.3d 33, 44, 713 N.E.2d 1075." *CommuniCare, Inc.*

*v. Wood Cty. Bd. of Commrs.*, 161 Ohio App.3d 84, 2005-Ohio-2348, 829 N.E.2d 706, at ¶ 38.

{¶ 32} Accordingly, we conclude that the lease agreement entered into by the airport authority and Whetstone Flyers in 1981 is void due to violations of R.C. 2921.42(A)(4) and 308.04.

{¶ 33} The airport authority's first assignment of error is sustained.

## II

{¶ 34} In its second assignment of error, the airport authority maintains that the lease agreement was void ab initio and therefore could not be ratified by a resolution passed by the Morrow County Board of Commissioners. We agree.

{¶ 35} As noted in the first assignment of error, the lease agreement is void. "A contract malum in se or against public policy cannot be made valid by ratification; but an act or contract which has been declared void by statute for the protection or benefit of a certain party or class of parties is voidable only and is capable of ratification by the acts or silence of the beneficiary or beneficiaries, except when in contravention to any public reason or public policy." *Holland Furnace Co. v. Joy* (1934), 16 Ohio Law Abs. 251, 255.

{¶ 36} Because the lease agreement entered into by the airport authority and Whetstone Flyers violates public policy, it could not be made valid by the commissioners' resolution passed on November 19, 1986. Accordingly, the trial court erred when it granted Whetstone Flyers' motion for summary judgment and denied the airport authority's motion for summary judgment on the basis that any defect in the lease agreement was cured by the resolution adopted by the commissioners in 1986.

{¶ 37} The airport authority's second assignment of error is sustained.

### Cross–Assignment of Error

{¶ 38} In its cross-assignment of error, Whetstone Flyers maintains that the trial court properly granted its motion for summary judgment but erred when it failed to order the airport authority and the Morrow County Board of Commissioners to comply with the arbitration procedures set forth in the lease agreement.

{¶ 39} We will not address the merits of the cross-appeal as it is moot, having determined that the trial court erred when it granted Whetstone Flyers' motion for summary judgment.

{¶ 40} Accordingly, Whetstone Flyers' cross-assignment of error is overruled as moot.

{¶ 41} For the foregoing reasons, the judgment of the Court of Common Pleas, Morrow County, Ohio, is hereby reversed, and the cause is remanded for further proceedings consistent with this opinion.

Judgment reversed<br>and cause remanded.

EDWARDS, J., concurs.

HOFFMAN, P.J., dissents.

HOFFMAN, Presiding Judge, dissenting.

{¶ 42} I respectfully dissent from the majority's disposition and analysis. The majority opinion concludes that the lease agreement entered into by the airport authority and Whetstone Flyers violates public policy; therefore, the lease is void ab initio. I respectfully disagree, finding that it is the public official's action in entering into the lease that violates public policy, not the lease agreement itself.

{¶ 43} R.C. 2921.42 states:

{¶ 44} "(A) No public official shall knowingly do any of the following:

{¶ 45} " * * *

{¶ 46} "(4) Have an interest in the profits or benefits of a public contract entered into by or for the use of the political subdivision or governmental agency or instrumentality with which he is connected;

{¶ 47} " * * *

{¶ 48} "(E) Whoever violates this section is guilty of having an unlawful interest in a public contract. Violation of division (A)(1) or (2) of this section is a felony of the fourth degree. Violation of division (A)(3), (4), or (5) of this section is a misdemeanor of the first degree."

{¶ 49} The statute clearly addresses the criminal liability of the public official for engaging in acts that violate the statute. The statute does not speak to the effect on the contract itself.

{¶ 50} The majority opinion cites *Holland Furnace Co. v. Joy* (1934), 16 Ohio Law Abs. 251, holding:

{¶ 51} "A contract malum in se or against public policy cannot be made valid by ratification; but an act or contract which has been declared void by statute for the protection or benefit of a certain party or class of parties is voidable only and is capable of ratification by the acts or silence of the beneficiary or beneficiaries, except when in contravention to any public reason or public policy."

{¶ 52} In the case sub judice, the lease agreement entered into between Whetstone Flyers and the airport authority does not itself violate public policy. Rather, the lease agreement standing alone benefits the public and furthers the interest of the airport authority and the Morrow County Board of Commissioners. It is the actions of Max Craven that have been declared by statute to be unlawful due to his conflicting interest as a member of the airport authority and as a partner in Whetstone Flyers. Therefore, the lease agreement is voidable, not void ab initio. The subsequent resolution by the commissioners passed on November 19, 1986, ratified the agreement, curing the validity of the lease agreement.

{¶ 53} Accordingly, I would overrule appellant's first and second assignments of error and affirm the trial court's April 5, 2004 judgment entry granting summary judgment in favor of Whetstone Flyers.